UNITED STATES of America, Appellee,

v.

Johnny DIFEAUX, also known as Johnny DeFoe, also known as Yoni, Defendant–Appellant.

Docket No. 98–1042.

United States Court of Appeals, Second Circuit.

Argued Nov. 2, 1998.

Decided Dec. 22, 1998.

Jeffrey Cohn, New York City, for Defendant–Appellant.

Nicole A. LaBarbera, Assistant United States Attorney, New York City (Mary Jo White, United States Attorney for the Southern District of New York, Alexandra A.E. Shapiro, Assistant United States Attorney, on the brief) for Appellee.

Before: KEARSE and POOLER, Circuit Judges, and POLLACK, District Judge.*

POOLER, Circuit Judge:

Johnny Difeaux argues that the district court erred in imposing sentence on him by (1) finding that he was ineligible for relief pursuant to the sentencing guidelines' safety valve provision, U.S.S.G. § 5C1.2; (2) failing to construe a letter from a deputy United States marshal from a district other than the sentencing district as a motion for a downward departure pursuant to U.S.S.G. § 5K1.1; and (3) failing to give him a sentencing hearing. We find that Difeaux waived his safety valve claim, the deputy marshal's letter was not a motion for downward departure, and Difeaux did not make a sufficient showing of his entitlement to a sentencing hearing. Therefore, we affirm.

## BACKGROUND

In an indictment filed March 20, 1996, a grand jury charged Difeaux with conspiracy to violate the narcotics laws of the United States, participation in a continuing criminal enterprise, and possession and distribution of cocaine base ("crack cocaine"). Because the indictment charged Difeaux with possession and distribution of more than fifty grams of crack cocaine and he had a prior narcotics conviction, Difeaux faced a mandatory minimum of twenty years imprisonment. See 21 U.S.C. § 841(b)(1)(A)(iii).[1]

Difeaux and the government initially attempted to negotiate an agreement allowing Difeaux to cooperate with the government in return for a government motion allowing the court to depart downward from the Guidelines range. When these negotiations failed, the government offered Difeaux a plea agreement, which he accepted. Of particular importance to Difeaux, the government agreed not to file a prior felony information concerning Difeaux' past narcotics conviction.

---

* Honorable Milton Pollack, of the United States District Court for the Southern District of New York, sitting by designation.

1. The government contends that Difeaux' potential exposure was at least twenty-five years. Therefore, in the absence of a plea, Difeaux faced a sentence between six and eleven years longer than the one he received.

Therefore, Difeaux no longer faced a twenty-year mandatory minimum. Instead, the parties stipulated that Difeaux' Guidelines sentencing range was 168 to 210 months and that neither party would seek a downward or upward departure from the Guidelines range. Difeaux further agreed not to "appeal ... any sentence within or below the stipulated Guidelines range." The government made a reciprocal promise concerning any sentence above or within the stipulated Guidelines range.

On December 13, 1996, Difeaux entered a plea of guilty to conspiracy to possess and distribute crack cocaine. Shortly after entering his plea, Difeaux discharged the attorney who had acted for him in negotiating the plea agreement and retained his current attorney, Jeffrey Cohn. Cohn then attempted to persuade Morris Panner, an Assistant United States Attorney assigned to the Difeaux prosecution, to accept certain information that Difeaux possessed in return for a substantial-assistance downward departure motion. Panner told Cohn that he was not interested.

Having failed in his attempt to negotiate a cooperation agreement with Panner, Cohn pursued other avenues. Specifically, he spoke with John Doe,[2] who both acted as a confidential informant for various law enforcement agencies and operated a business that assisted defendants who wished to cooperate with the government. From Doe, Cohn learned that United States Marshal Cesar Torres of the District of Puerto Rico wished to apprehend Andres Colon–Miranda, a fugitive working in the area where Difeaux had worked prior to his arrest. Difeaux agreed to assist in Colon–Miranda's apprehension and—through surrogates—took steps to aid the government in finding Colon–Miranda. Cohn alleges that Assistant United States Attorney John Katko of the District of Puerto Rico assured him "that if Mr. Difeaux, through surrogates, could help locate Colon–Miranda, it would inure to Mr. Difeaux' benefit."

Torres used Doe as a confidential informant on the advice of his friend, Deputy United States Marshal David A. Drake of the

District of Maine. Prior to Difeaux' sentencing, Drake sent the court a letter indicating that "Colon–Miranda was apprehended as a direct result of the [confidential informant] working with Difeaux' contacts." In addition, Katko sent Panner a memo from Torres in which Torres characterized Difeaux' assistance as substantial. Despite a request from Cohn, the government did not supply the court or defense counsel with the Torres memo until Cohn showed the court a copy. Neither the Torres memo nor the Drake letter requested or suggested that the court grant Difeaux a downward departure for substantial assistance.

Prior to sentencing, the trial court also received a presentence report ("PSR") in which the Probation Department for the Southern District of New York recommended that the court not grant Difeaux the benefit of the safety valve provision of Guidelines §§ 2D1.1(b)(6) and 5C1.2 because Difeaux acted as a supervisor. Nevertheless, the department did not recommend an enhancement for role in the offense pursuant to U.S.S.G. § 3B1.1.

Difeaux argued during the sentencing process[3] that the court should consider the Drake letter to be a motion for a downward departure. He also contended that the government had an unconstitutional motive for refusing to make a formal motion pursuant to U.S.S.G. § 5K1.1. Difeaux requested a hearing to resolve purportedly contested issues of fact including the extent of his assistance, the government's unconstitutional motive, and Drake's intent. Difeaux also argued that because he was not an organizer, leader, or manager within the meaning of U.S.S.G. § 3B1.1, he merited a downward adjustment pursuant to U.S.S.G. §§ 2D1.1(b)(6) and 5C1.2. The government responded that (1) Drake had no authority to make a downward departure motion; (2) Difeaux did not make a substantial showing of improper motive and therefore had no right to a hearing; (3) the government investigated the Torres and Drake claims concerning Difeaux' assistance by talking with the marshals actually involved in Colon–Miranda's apprehension and determined that Difeaux' assistance was not

---

**2.** We use a pseudonym because John Doe has been described as a confidential informant.

**3.** Sentencing was twice adjourned.

substantial; and (4) Difeaux was not entitled to safety valve relief. After rejecting each of Difeaux' arguments, the trial court sentenced him to 168 months of imprisonment, the lowest point in the stipulated Guidelines range. The judge noted, however, that Difeaux gave the government "some meaningful assistance . . . through surrogates" and that he "would consider some sort of a departure . . . were [he] permitted as a matter of law to do so."

## DISCUSSION

### I. The Safety Valve Issue

The government argues that because Difeaux waived his right to appeal any sentence within the stipulated Guidelines range, he has no right to appeal the district court's denial of a safety valve adjustment. Difeaux counters that his waiver should not be enforced because .the plea agreement was a contract of adhesion.[4]

▇ A defendant who knowingly and voluntarily enters into a plea agreement containing a waiver of appeal rights and obtains the benefits of such an agreement is bound by the waiver provision. *See United States v. Salcido-Contreras*, 990 F.2d 51, 53 (2d Cir.1993). Although the reviewing court must read the waiver provision narrowly and construe ambiguous provisions against the government, which drafted the agreement and enjoys unequal bargaining power in the sentencing process, *see United States v. Ready*, 82 F.3d 551, 558–59 (2d Cir.1996), the court must also enforce a valid waiver that covers the appellate issue presented, *see United States v. Yemitan*, 70 F.3d 746, 747–48 (2d Cir.1995) (enforcing waiver provision despite a claim that sentencing court illegally failed to state .its reason for imposing sentence).

▇ The waiver provision in Difeaux' plea agreement precludes appeal of any sentence

within the "stipulated Guidelines range." Difeaux' sentence fell within the stipulated Guidelines range despite the court's refusal to grant him the benefit of the safety valve provisions. Therefore, Difeaux waived his right to appeal this issue.

### II. Substantial Assistance

▇ Generally, the sentencing court can depart from the Guidelines range to account for a defendant's assistance to a federal investigation or prosecution only "[u]pon motion of the government." U.S.S.G. § 5K1.1. The Assistant United States Attorney assigned to prosecute Difeaux declined to make a Section 5K1.1 motion. Nevertheless, Difeaux argues that the district court erred by failing to consider Deputy Marshal Drake's letter as a motion for downward departure.[5] There was no error. *Cf. Melendez v. United States*, 518 U.S. 120, 126, 116 S.Ct. 2057, 135 L.Ed.2d 427 (1996) (construing 18 U.S.C. § 3553(e)). "Papers simply 'acknowledging' substantial assistance are not sufficient if they do not indicate desire for, or consent to, a sentence [outside the guidelines range]." *Id.* Drake made no request for a downward departure. Therefore, he did not make a motion. Moreover, Drake is not "the government" for purposes of Section 5K1.1. Because the guideline requires a motion, common sense dictates that the motion must be made by the attorney representing the government. Moreover, we repeatedly have indicated that it is "the prosecutor" who determines whether to make a Section 5K1.1 motion. *See United States v. Kaye*, 140 F.3d 86, 88 (2d Cir.1998); *United States v. Ming He*, 94 F.3d 782, 788–89 (2d Cir.1996); *United States v. Resto*, 74 F.3d 22, 25 (2d Cir.1996). Finally, United States Marshals are prohibited from practicing law in federal courts. *See* 28 U.S.C. § 568.[6]

---

4. Difeaux also argues that the waiver does not apply because he alleges a constitutional violation and the plea agreement did not bind the United States Attorney's office for the District of Puerto Rico. Both of these arguments exclusively concern the substantial assistance portion of Difeaux' appeal. Because the government does not claim that Difeaux waived his right to appeal the district court's substantial assistance holding, we need not consider these two arguments.

5. The government does not argue that Difeaux waived his right to appeal the district court's treatment of the substantial assistance issue. Consequently, we assume but do not decide that Difeaux did not waive his right to appeal this issue.

6. We recently held that the court may consider a defendant's cooperation with state or local authorities pursuant to U.S.S.G. § 5K2.0. *See Kaye*, 140 F.3d at 89. Because Difeaux assisted in the investigation of a federal offense, *Kaye* does not

Difeaux also argues that the district court should have conducted a hearing to assess whether (1) Katko or Torres promised Difeaux a substantial assistance motion and (2) the government had an impermissible motive to decline to make a substantial assistance motion.

The district court was not required to hold a hearing on either of these questions. First, Difeaux did not request a hearing to determine whether Katko or Torres promised to make a Section 5K1.1 motion. Therefore, the district court could not have erred by failing to hold a hearing on this issue. Second, Difeaux had "no right to ... an evidentiary hearing unless he ma[de] a substantial threshold showing" of an improper motivation on the prosecutor's part. *Wade v. United States,* 504 U.S. 181, 186, 112 S.Ct. 1840, 118 L.Ed.2d 524 (1992) (internal quotation omitted). Difeaux suggested two possible impermissible motives—prosecutorial vindictiveness and racism. The first rests on Difeaux' claim that the government hardened its position because the defense embarrassed Panner by producing the Torres memo after Panner denied having any additional documents. Because Panner's position on substantial assistance did not change after production of the Torres memo, this claim is supported by nothing but speculation. Difeaux' racism claim fares little better. Relying on newspaper articles and unspecified sources, Difeaux' attorney claimed that the United States Marshal's office for the Southern District of New York was infected by racism and that one marshal had been transferred out of the office because of racism. Because the United States attorney initially relied on reports from the Marshal's office in determining not to make a substantial assistance motion, Cohn argued that its decision necessarily was tainted by racism. The link between these hearsay allegations and a racist motive on the part of the United States Attorney's office was far too tenuous and speculative to require a hearing. *See Wade,* 504 U.S. at 186, 112 S.Ct. 1840 ("generalized allegations of improper motive" do not require a hearing).

apply. *See id.* at 87 (noting that Section 5K1.1 governs federal offenses).

## CONCLUSION

For the reasons discussed, the judgment is affirmed.