UNITED STATES of America,

v.

Renato P. MARIANI, Michael L.
Serafini, Leo R. Del Serra,
Alan W. Stephens,

No. 3:CR–98–307.

United States District Court,
M.D. Pennsylvania.

Nov. 15, 2000.

Eli C. Shulman, Floyd Abrams, Susan Buckley, James E. Rosenfeld, Cahill, Gordon & Reindel, New York City, Renato P. Mariani, Dunmore, PA, Thomas Colas Carroll, Mark E. Cedrone, Carroll & Cedrone, Philadelphia, PA, for Renato P. Mariani.

Michael L. Serafini, Moosic, PA, pro se.

Gregory T. Magarity, Philadelphia, PA, for Michael L. Serafini.

Leo R. Del Serra, West Pittston, PA, pro se.

Robert E. Welsh, Jr., Welsh & Recker, P.S., Philadelphia, PA, for Leo R. Del Serra.

Alan W. Stephens, Mountaintop, PA, pro se.

Harold M. Kane, Lake Ariel, PA, for Alan W. Stephens.

Bruce Brandler, U.S. Attorney's Office, Harrisburg, PA, for U.S.

### *MEMORANDUM*

VANASKIE, Chief Judge.

 Defendant Renato Mariani has moved to dismiss the indictment, with prejudice, on the ground that United States Attorney David Barasch should not have appeared before the indicting grand jury in this case because Mr. Barasch was purportedly burdened by an impermissible "conflict of interest." The disabling conflict is said to arise from the fact that Mr. Barasch had been involved in attempts to regulate the solid waste industry while serving as Special Assistant to Governor Robert P. Casey in the early 1990's, and then assumed an active role in this mail fraud prosecution based on allegations that Empire Sanitary Landfill ("ESL") accepted more waste than its state-issued permit authorized and attempted to cover up the permit violations by submitting false reports to regulatory authorities. Mr. Mariani maintains that Mr. Barasch's successive roles, first, as state regulator attempting to limit the out-of-state waste accepted at ESL (an effort that Mr. Mariani vigorously contested), and, second, as federal prosecutor pursuing charges that Mr. Mariani defrauded the state and other governmental entities by causing ESL to report that it received less waste than it actually did, deprived Mr. Mariani of an unbiased grand jury investigation.[1] Spe-

---

**1.** As stated in *United States v. Gold,* 470 F.Supp. 1336, 1345–46 (N.D.Ill.1979):

cifically, Mr. Mariani contends that Mr. Barasch's alleged "conflict of interest" rendered him "a person not authorized by Fed.R.Crim.P. 6(d) to participate in grand jury proceedings nor appear before the grand jury, as he did, in this investigation." (Mem. in Support of Mot. to Dismiss (Dkt. Entry 78) at 7.) Mr. Mariani asserts that, at a minimum, an evidentiary hearing is warranted and that he should be entitled to discovery and issuance of subpoenas in connection with such a hearing.[2]

Having carefully considered the parties' respective contentions, I find that defendants' latest challenge to the indictment is untimely. Even if Mr. Mariani had shown good cause for not raising this issue until almost two years after the indictment was returned, he would not be entitled to relief. Succinctly stated, the fact that Mr. Barasch may have been involved in state efforts to regulate the solid waste industry did not disable him from participating in a mail fraud prosecution that alleged the willful under-reporting of solid waste accepted by ESL, and, in any event, the defense has not tendered any evidence suggesting that it was somehow prejudiced by Mr. Barasch's participation in the grand jury proceedings.

## A. The Motion to Dismiss Is Untimely

On December 15, 1998, the grand jury returned a 25–count indictment charging Mr. Mariani and his co-defendants with conspiracy to commit mail fraud, in violation of 18 U.S.C. § 371 (Count I), and mail fraud, in violation of 18 U.S.C. § 1341 (Counts 2 through 25). In summary, the indictment alleges that between 1989 and 1997, Mariani and his co-defendants, all of whom were associated with ESL, engaged in a scheme to defraud the Commonwealth of Pennsylvania, local government entities and others of property by causing ESL to accept municipal waste in excess of limits established by permits issued by the Commonwealth of Pennsylvania and by not reporting the receipt of such excess garbage. The gist of the indictment "is the alleged willful under-reporting to government agencies of municipal waste received by [ESL]." *United States v. Mariani*, 90 F.Supp.2d 574, 576 (M.D.Pa.2000). It is alleged that governmental entities and others lost revenues as a result of the under-reporting of waste.

The indictment followed a lengthy grand jury investigation. It appears undisputed that Mr. Barasch actively participated in the grand jury process, questioning witnesses and presenting evidence. Mr. Mariani asserts that "[s]uch detailed and hands-on involvement of the chief law enforcement officer for this judicial district is not commonplace." (Mem. in Support of Mot. to Dismiss (Dkt. Entry 78) at 3.) Mr. Mariani acknowledges awareness of Mr. Barasch's direct participation in the grand jury proceedings as long ago as the spring of 1996. Although characterizing Mr. Bar-

---

Implicit in the Fifth Amendment prohibition that '[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . .' is the guarantee that a grand jury which presents or indicts will be fair and unbiased. This guarantee is important to a person under a federal criminal investigation because the purposes of the grand jury are 'to provide a fair method for instituting criminal proceedings,' to serve 'as a protector of citizens against arbitrary and oppressive governmental action,' and to assure the 'protecting of citizens against unfounded criminal prosecutions.' Therefore, these purposes make it necessary that the grand jury be an investigating body

'acting independently of either prosecuting attorney or judge,' that it be 'independent and informed,' and that it perform its mission, which is 'to clear the innocent, no less than to bring to trial those who may be guilty.'

(citations omitted).

**2.** Co-defendants Leo R. Del Serra and Michael L. Serafini join in Mr. Mariani's motion to dismiss. (*See* Dkt. Entries 79 and 80.) The remaining co-defendant, Alan W. Stephens, did not join in the motion to dismiss, and recently pled guilty to one count of the indictment returned in this matter.

asch's involvement in the grand jury proceedings as unusual, Mr. Mariani did not suggest that there was anything improper in that participation until August of 2000. In the meantime, comprehensive motions to dismiss were filed in May of 1999 and decided by Order of this Court in February of 2000.

■ Rule 12(b)(2) of the Federal Rules of Criminal Procedure requires that "[d]efenses and objections based on defects in the indictment" be raised in pretrial motions. Rule 12(c) authorizes the establishment of pretrial motion deadlines. In this case, the motion deadline was May 17, 1999. Rule 12(f) provides:

> Failure by a party to raise defenses or objections or to make requests which must be made prior to trial, at the time set by the court pursuant to subdivision (c) or prior to any extension thereof made by the Court; shall constitute waiver thereof, but the court for cause shown may grant relief from the waiver.

Challenges to an indictment based upon alleged improprieties by government counsel are subject to waiver under Rule 12(f). *See United States v. Duncan,* 896 F.2d 271, 274–75 (7th Cir.1990); *Soper v. United States,* 220 F.2d 158, 160 (9th Cir.), *cert. denied,* 350 U.S. 828, 76 S.Ct. 58,' 100 L.Ed. 739 (1955).

■ Pursuant to the clear terms of Rule 12(f), the defendants waived the challenge to the indictment concerning Mr. Barasch's alleged conflict by not raising it by May 17, 1999. Defendants claim, however, "good cause" for their failure to raise the issue of a conflict of interest in a more timely manner. Specifically, Mr. Mariani contends that he did not become aware of Mr. Barasch's employment as Special· Assistant to Governor Casey until April of this year.

Although Mr. Mariani may not have been aware of Mr. Barasch's role in state government in the early 1990s, it is indisputable that Mr. Barasch's position as Special Assistant to Governor Casey was readily discoverable with due diligence. Having known of Mr. Barasch's direct involvement in the grand jury proceedings and having considered such involvement unusual, the defendants certainly could have examined Mr. Barasch's prior employment to ascertain whether there was some non-apparent basis for his active participation in the grand jury investigation. Not having availed themselves of the opportunity to obtain readily accessible information pertinent to the motivations for the extraordinary direct participation of a United States Attorney in grand jury proceedings, defendants have not shown good cause to challenge that involvement more than a year after the deadline for filing pretrial motions. After all, this is not a case where the information that forms the basis for the challenge to the indictment was concealed.

■ In any event, the defense does not provide an adequate explanation as to why it took four months from the date of the alleged discovery of Mr. Barasch's position in state government until the filing of the motion to dismiss. The defense merely asserts that its "investigation was cumbersome and difficult since it involved reviewing old litigation files and certain other records made available to the public . . . ." (Mem. in Support of Mot. to Dismiss (Dkt. Entry 78) at 15.) As pointed out by the government, the defense has not revealed the product of this investigation for purposes of assessing whether the four month delay was reasonable. " 'A defendant seeking an adjudication of tardily made motions has the burden of demonstrating that these motions are nonetheless made within a reasonable time because of the presence of special circumstances.'" *United States v. Solomon,* 216 F.Supp. 835, 837 (S.D.N.Y. 1963). The bald assertion that the investigation preceding the filing of the motion was "cumbersome and difficult" affords an insufficient basis for a conclusion that the defendants acted with due diligence and reasonable dispatch after learning of

Mr. Barasch's role in state government in the early 1990's.

Moreover, the defense did not alert this Court to the possibility of a motion to dismiss the indictment on the grounds of an alleged conflict of interest until August 4, 2000, four months after learning of a possible conflict and the day after this Court entered an Order setting a scheduling conference for August 8, 2000. The scheduling conference was prompted by the fact that, by Order dated March 28, 2000, trial in this matter was set for September, 2000. With trial looming, the defense should have been much more diligent in apprising the court of a possible eleventh hour challenge to the indictment. At no time, however, did the defense move for leave to file out of time a motion to dismiss the indictment. Clearly, at a minimum, the defense should have alerted the Court to the possibility of this motion while it was undertaking its pre-motion investigation. To allow the defense to now raise this matter four months after discovering the basis for the motion and only one month prior to a trial that had been set in March of this year would subvert the orderly management of the Court's docket. "[G]iven the intricacies of trial scheduling and crowded dockets, and the desirability of deciding questions of government misconduct not relevant to the issue of guilt prior to trial, courts are understandably reluctant to grant relief except in unusually meritorious cases for untimely motions under Rule 12(f)." *United States v. Mangieri*, 694 F.2d 1270, 1283 (D.C.Cir.1982). This is not such an "exceptionally meritorious case." Under these circumstances, defendants will not be relieved of their waiver of the challenge to the indictment based upon Mr. Barasch's alleged conflict of interest.

## B. *There Is No Disabling Conflict of Interest*

Even if the matter had been raised in a timely manner, the defense would not be entitled to dismissal of the indictment. Indeed, the proffer made by the defense is insufficient to warrant an evidentiary hearing.

The premise for Mr. Mariani's challenge to Mr. Barasch's participation in the grand jury proceedings is Pennsylvania Rule of Professional Conduct 1.11(c), which provides:

> Except as law may otherwise expressly permit, a lawyer serving as a public officer or employee shall not (1) participate in a matter in which the lawyer participated personally and substantially while in private practice or non-governmental employment, unless under applicable law no one is or by lawful delegation may be, authorized to act in the lawyer's stead in the matter.

Acknowledging that the Rule, on its face, applies only to government employment succeeding *private* employment, the defense points out that the comments to the rule state:

> When the client is an agency of one government, that agency should be treated as a private client for purposes of the rule if the lawyer thereafter represents an agency of another government, as when a lawyer represents a city and subsequently is employed by a federal agency.

Thus, Mr. Mariani asserts that Rule 1.11(c) applies to Mr. Barasch's situation, which involved leaving state government to become the U.S. Attorney for this District.

For purposes of assessing the defense motion, the government is willing to accept as true the following facts:

1. Mr. Barasch served as Special Assistant to the late Governor Casey from 1990 to 1993.

2. As Special Assistant to the Governor, Mr. Barasch was, in part, responsible for implementing and monitoring legislation and regulations concerning the regulations of landfills generally and, specifically, ESL.

3. During the years that Mr. Barasch served as Special Assistant to Gover-

nor Casey, there was a significant amount of litigation between ESL, trade associations to which ESL belonged, and the Commonwealth of Pennsylvania.

4. Mr. Barasch was involved in that litigation.

5. Governor Casey was a vocal opponent of ESL and its efforts to accept trash and other debris from the states of New Jersey and New York.

6. Mr. Barasch was personally involved in supervising the Commonwealth's efforts to regulate ESL and the litigation which resulted when ESL challenged such regulatory efforts.

(Mem. in Opp. to Mot. to Dismiss (Dkt. Entry 84) at 17–18.)

■ Assuming the applicability of Rule 1.11(c) to Mr. Barasch, these facts are insufficient to warrant an evidentiary hearing for at least three reasons. First, the "matter" that is the focus of this prosecution is not substantially the same as the Commonwealth of Pennsylvania's efforts to curb out-of-state waste. As pointed out by the government, "[t]hat the Casey administration issued Executive Orders reducing the amount of waste from outside of Pennsylvania that could be disposed of in Pennsylvania landfills, or that [ESL] challenged those orders as unconstitutional, has nothing to do with the mail fraud prosecution." (Id. at 20.) At the heart of the regulatory efforts was the establishment of limits on interstate waste being imported into Pennsylvania and deposited in Pennsylvania landfills, including ESL. The focus of this case is not on the source of waste being deposited at ESL. At issue here "is the alleged willful under-reporting to government agencies of municipal waste received

by [ESL]." *United States v. Mariani*, 90 F.Supp.2d at 576. While evasion of prescribed limits may have been one of the objects of the scheme to defraud, the "matter" investigated by the grand jury was not the source of the waste. Nor was the grand jury attempting to ascertain the appropriate limits of waste that ESL could accept. Thus, the "matter" which Mr. Barasch purportedly pursued while Special Assistant to Governor Casey is not the "matter" that is at issue here. The mere fact that ESL may have been a target of the regulatory efforts does not disqualify Mr. Barasch from enforcing the mail fraud statute in a scheme that implicates his earlier regulatory efforts.[3]

Even if the matters pursued by the Commonwealth of Pennsylvania in the early 1990's and this mail fraud prosecution were substantially the same, Mr. Barasch would not be precluded from participating in this prosecution. In *United States v. Birdman*, 602 F.2d 547 (3d Cir.1979), *cert. denied*, 444 U.S. 1032, 100 S.Ct. 703, 62 L.Ed.2d 668 (1980), our Court of Appeals ruled that the dual employment status of a United States government agency staff attorney deputized as a special attorney of the United States Department of Justice to conduct a grand jury investigation did not amount to a conflict of interest warranting dismissal of the indictment. It has also been recognized that state attorneys who have investigated a matter may be deputized as Special Assistants to the Attorney General of the United States for purposes of conducting a grand jury investigation on the same matter. *See United States v. Rosendin Electric, Inc.*, 122 F.R.D. 230, 247–48 (N.D.Cal.1987). If the appointment of a state attorney as a spe-

3. Implicit in the defense argument is the presumption that Mr. Barasch bore some personal animosity towards the defendants as a result of the earlier litigation. No facts have been presented to support this assertion. The mere fact that an attorney's prior employer took a position adverse to the defendant in a subsequent criminal prosecution handled by the attorney as a prosecutor is not enough to

raise a viable question as to an improper motive for the prosecution. Absent some evidence that the prosecutor was pursuing a personal vendetta, an evidentiary hearing is unwarranted and the defense is not entitled to engage in some fishing expedition to develop evidence of the feared personal vendetta. *See United States v. Benson*, 941 F.2d 598, 611–12 (7th Cir.1991).

cial assistant to the Attorney General to conduct a grand jury investigation into a matter examined by that attorney as a state employee does not present a disabling conflict of interest, then Mr. Barasch's participation in this mail fraud prosecution following his service to the Commonwealth of Pennsylvania as Special Assistant to Governor Casey surely is not the kind of conflict of interest that the drafters of the Rules of Professional Conduct intended to address.[4]

 Finally, even if there was a conflict of interest in this case, Mr. Mariani has not made a sufficient showing of prejudice to warrant a hearing. As explained by the late Judge Gawthrop in *United States v. McDade*, Crim. A. No. 92–249, 1992 WL 187036, at * 4 (E.D.Pa., July 30, 1992), "[e]ven when courts find that a prosecutor has violated ethical rules, they may not dismiss the indictment unless the defendant can show that the misconduct amounted to more than harmless error, that it substantially influenced the jury's decision to indict." This proposition is drawn from *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988), in which the Court held that in the case of a non-constitutional error dismissal of an indictment is appropriate only "if it is estab-

lished that the violation substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence of such violations."

In this case, the defense acknowledges that it has known since 1996 that Mr. Barasch was an active participant in the grand jury investigation.[5] Despite having access to a number of witnesses who appeared before the grand jury, the defense has not proffered any evidence to suggest any impropriety on the part of Mr. Barasch in connection with his grand jury appearances. Absent some evidence suggesting that he displayed some personal animosity towards the defendants or abused the alleged conflict of interest for purposes of obtaining an indictment, the defense has not mounted an arguably meritorious challenge to the indictment warranting discovery and an evidentiary hearing.[6]

In the analogous context of a claim of vindictive prosecution, an evidentiary hearing is warranted only where the defendant has made " 'a substantial threshold showing of an improper motivation on the prosecutor's part.' " *United States v. Difeaux*, 163 F.3d 725, 729 (2nd Cir.1998).[7]

---

4. It should be noted that the existence of a conflict of interest does not render a person otherwise authorized to appear before a grand jury a "prohibited" person. Rule 6(d) of the Federal Rules of Criminal Procedure authorizes attorneys for the government to be present while the grand jury is in session. The fact that a government attorney may be burdened by a conflict of interest does not destroy that attorney's authorized status. As recognized in *Birdman*, "a professional impropriety does not work a physical dissolution of … status as government counsel." 602 F.2d at 558. Thus, the mere fact that a government attorney with a conflict of interest appeared before a grand jury would not, by itself, serve to vitiate the grand jury proceedings.

5. The defense acknowledges obtaining this information pursuant to a joint defense agreement with witnesses appearing before the grand jury. (Mem. in Support of Mot. to Dismiss (Dkt. Entry 78) at 6.)

6. It bears emphasizing that the defense has had access to numerous grand jury witnesses. Although the defense may not have yet received grand jury transcripts for some of those witnesses, the fact that it has not tendered the affidavit of any person to suggest impropriety on the part of Mr. Barasch in connection with his appearances before the grand jury belies their challenge to the indictment. If upon receipt of grand jury transcripts as Jencks Act material, the defense discovers improper conduct on the part of Mr. Barasch, they may seek reconsideration of this decision.

7. Given defendants' suggestion that Mr. Barasch harbored some personal animosity in light of his work in seeking to regulate the municipal waste industry and ESL's opposition to those efforts, case law on vindictive prosecution is an appropriate analogue for addressing the defendants' claim that they are

In addition to a threshold showing that the prosecutor harbored genuine hostility, the defendant must also present evidence indicating that "absent this motive, defendant would not have been prosecuted." *United States v. Cyprian,* 23 F.3d 1189, 1196 (7th Cir.), *cert. denied,* 513 U.S. 879, 115 S.Ct. 211, 130 L.Ed.2d 139 (1994); *United States v. Evans,* 796 F.2d 264, 266 (9th Cir.1986). In this case, the defendants have not made a substantial threshold showing of either specific animus or ill will on the part of Mr. Barasch or that, absent such factors, they would not have been prosecuted. Accordingly, defendants' motions may be denied without an evidentiary hearing.[8]

## C. CONCLUSION

For the reasons set forth above, the motion to dismiss the indictment will be denied.

---

entitled to an evidentiary hearing on their motions to dismiss.

8. The requisite showing to obtain a hearing on a claim of vindictive prosecution has also been expressed in terms of an offer of " 'sufficient evidence to raise a reasonable doubt that the government acted properly in seeking the indictment.' " *Benson,* 941 F.2d at 611. The proffer made by the defense in this case is not sufficient to raise a reasonable doubt as to the government's conduct in seeking an indictment in this case.