OPINION OF THE COURT
 

 Levine, J.
 

 The opposing parties to this litigation are brother and sister who, with their children, collectively hold a bare majority of the issued and outstanding shares of the capital stock of Ajax Electric Motor Corp., a closely held corporation based in Rochester. Respondent Neil Norry has been the chief executive officer of Ajax. The immediate matter in dispute is the validity of the election of the board of directors of the corporation at its annual shareholders’ meeting held March 13, 1995.
 

 Central to that dispute is a March 5, 1982 shareholders’ agreement between Norry (and his two sons) and his sister, appellant Deborah Ronnen, on behalf of herself and as custodian for her children. The shareholders’ agreement granted Norry certain rights to vote Ronnen’s stock and that of her children.
 

 The March 13,1995 shareholders’ meeting began in acrimony between Ronnen and Norry, who initially chaired the meeting. Immediately prior to the meeting, Ronnen served Norry with a temporary restraining order prohibiting him from voting the Ronnen shares regarding proposed amendments to the Ajax bylaws and certificate of incorporation, which were on the agenda for the meeting. When the meeting convened, Ronnen’s
 
 *587
 
 attorney had the proceedings videotaped, without prior notice to Norry. In response to these actions, Norry announced that the meeting was being adjourned. Over Ronnen’s protest, he voted the Ronnen shares with the Norry shares for a combined majority vote to adjourn and left the meeting. In his absence, Ronnen and the remaining shareholders of Ajax, including appellants Bruce Lipsky and Joseph Livingston, elected a slate of directors.
 

 Norry then brought a proceeding, pursuant to Business Corporation Law § 619, to invalidate the election of directors in his absence and for an order directing a new election. Ronnen, Lipsky and Livingston petitioned under section 619 to confirm the election. Supreme Court interpreted the shareholders’ agreement as giving Norry the right to vote the Ronnen shares in any election of a board of directors. This factor, together with the hostile atmosphere permeating the March 13, 1995, meeting, led Supreme Court to conclude that a new election should be held. The Appellate Division affirmed the order for a new election of directors, with two Justices dissenting on the ground that the shareholders’ agreement did not transfer Ronnen’s voting rights to Norry for board of directors elections and that the election was in other respects properly conducted. Ronnen, Lipsky and Livingston appeal as of right on the basis of the double dissent
 
 (see,
 
 CPLR 5601 [a]).
 

 We now affirm. The parties are not in dispute over the circumstances leading up to the March 5, 1982 agreement between the Norry shareholders and Ronnen. Ajax had been a highly prosperous distributor of electric motors nationwide, founded by Irving Norry (the father of Neil Norry and Deborah Ronnen), Sydney Gilbert and David Lipsky. Irving Norry and his wife had, by 1980, transferred by gift or sale all of their shareholdings in Ajax to their two children and their families. Friction developed between Norry and Ronnen regarding, among other things: Norry’s acquisition for his children of his mother’s Ajax shares, upsetting the equality of the Norry siblings’ interests in the corporation; Ronnen’s displeasure over an irrevocable option her brother had been granted in 1967 to acquire her Ajax shares under what she considered an inadequate price formula; the level Norry had fixed for his compensation and other alleged financial self-dealing in Ajax and in Norry Electric Co., a separate family business; and Ronnen’s objection to not being kept informed of financial decisions Norry made in connection with the management of both corporations. Ronnen wished to ensure that her interest in
 
 *588
 
 Ajax could be passed on to her children free of interference by Norry. Norry expressed willingness to accommodate Ronnen, provided he was guaranteed continued managerial control of Ajax and was given the opportunity to acquire the Ronnen shares in Ajax before they could be sold to an outsider. He also wished to buy out his sister’s interest in Norry Electric Co. These various objectives of the parties were implemented in the shareholders’ agreement and other contemporaneous transactions.
 

 The shareholders’ agreement recited as one of its purposes "to provide for the vote of [the Norry and Ronnen families’] Shares in order to provide for continuity in the control and management of Ajax.” The primary voting control provision was set forth in paragraph 8 of the agreement. Subparagraph 8 (a) provided that the Ronnen shareholders "agree that Neil Norry shall exercise voting rights over the Shares owned by them * * * with respect to any and all matters
 
 relating to Ajax’s day-to-day operations and corporate
 
 management” (emphasis supplied). Norry was also given the right to vote the Ronnen shares regarding-any sale of substantially all of Ajax’s assets or stock to an outside party, provided that the transaction treated the Norry and Ronnen interests equivalently. The agreement, however, reserved to Ronnen the right to vote the Ronnen shares "[i]n connection with other major corporate policy decisions,” and listed as examples of such major decisions, "other types of corporate reorganizations” and other similar actions. Subparagraph 8 (b) gave Norry an irrevocable proxy to vote the Ronnen shares as provided in the preceding subparagraph.
 

 The unambiguous words of paragraph 8 and the recital purpose clause of the agreement present an issue of pure contract interpretation for the court
 
 (see, Bethlehem Steel Co. v Turner Constr. Co.,
 
 2 NY2d 456, 460;
 
 Brainard v New York Cent. R. R. Co.,
 
 242 NY 125, 133), and admit of no construction other than the conferral to Norry of the right to vote the Ronnen shares in any election of a board of directors of Ajax. The undisputed background facts support this interpretation as well
 
 (see, Brainard v New York Cent. R. R. Co., supra).
 
 The parties have not cited to any provision of the Ajax certificate of incorporation transferring corporate management decisions from the board of directors to the shareholders
 
 (see,
 
 Business Corporation Law § 620 [b]). Therefore, management of the business of Ajax was, by statute, exclusively "under the direction of its board of directors” (Business Corporation Law § 701;
 
 see,
 
 
 *589
 

 McQuade v Stoneham,
 
 263 NY 323, 329,
 
 rearg denied
 
 264 NY 460).
 

 We have held that "the law in force at the time [an] agreement is entered into becomes as much a part of the agreement as though it were expressed or referred to therein, for it is presumed that the parties had such law in contemplation when the contract was made and the contract will be construed in the light of such law”
 
 (Dolman v United States Trust Co.,
 
 2 NY2d 110, 116). Thus, without the right to vote the Ronnen shares to elect the directors of the corporation, the transfer of voting rights regarding "corporate management” under subparagraph 8 (a) of the agreement would be essentially meaningless since management control was vested in the directors and not the shareholders. We have long and consistently ruled against any construction which would render a contractual provision meaningless or without force or effect
 
 (see, Two Guys from Harrison-N.Y. v S.F.R. Realty Assocs.,
 
 63 NY2d 396, 404;
 
 Corhill Corp. v S. D. Plants, Inc.,
 
 9 NY2d 595, 599;
 
 Muzak Corp. v Hotel Taft Corp.,
 
 1 NY2d 42, 46;
 
 Rentways, Inc. v O’Neill Milk & Cream Co.,
 
 308 NY 342, 347;
 
 Fleischman v Furgueson,
 
 223 NY 235, 239).
 

 The reservation to Ronnen of the right to vote the Ronnen shares "[i]n connection with * * * major corporate policy decisions” is consistent with the parties’ intent to confer on Norry the right to vote the Ronnen shares in the election of board of directors, since major corporate decisions, such as corporate mergers, connote extraordinary change while director elections are the ordinary subject matter of a shareholder meeting. It, therefore, follows that by agreeing to transfer to Norry the right to vote the Ronnen shares "with respect to any and all matters relating to Ajax’s * * * corporate management,” the parties must have intended, on the facts of this case, to give Norry the right to vote the shares to elect a board of directors.
 

 By the same token, in the absence of having an irrevocable proxy to vote their cumulative majority interests for the election of directors, the shareholders’ agreement’s recited purpose to ensure "continuity in the control and management of Ajax” could not be achieved. We should not adopt a construction of subparagraph 8 (a) which would frustrate one of the explicit central purposes of the agreement
 
 (see, Matter of Cromwell Towers Redevelopment Co. v City of Yonkers,
 
 41 NY2d 1, 6;
 
 Matter of Herzog,
 
 301 NY 127, 135;
 
 Genet v President of Del. & Hudson Canal Co.,
 
 163 NY 173, 179).
 

 
 *590
 
 Ronnen, however, points to the language of paragraphs 10, 12 and 14 of the shareholders’ agreement as negating any inference that Norry was given the right to vote the Ronnen shares in elections of the board of directors. Paragraph 10 of the agreement recites that "[t]he parties agree that * * * they shall vote the Shares” to ensure a seat on the board of directors for Deborah Ronnen. Paragraph 12 provides that "[t]he parties agree that * * * they shall vote the Shares in the election of Directors” to ensure Ronnen’s access to all reports concerning the management of Ajax, and paragraph 14 similarly requires the "parties” to "vote the Shares in the election of Directors” so as to generally cap Norry’s total executive compensation at $125,000 a year.
 

 Ronnen, thus, argues that the literal language of paragraphs 10, 12 and 14 militates against an interpretation of the agreement ceding the right of Ronnen, "a party” to the agreement, to vote the Ronnen shares for the election of directors, and that such an interpretation would deprive those provisions of any force or effect. Ronnen further argues that the use of the plural, "parties,” in those paragraphs was ignored by the courts below, who rewrote the clauses in question as an agreement that, singularly, "Neil Norry shall vote the Shares” in accordance with the substantive requirements of paragraphs 10, 12 and 14. We disagree.
 

 As we have already discussed, subparagraph 8 (a) of the shareholders’ agreement unequivocally guarantees the right of Norry to vote a majority block of shares on all matters "relating to * * * corporate management” of Ajax, which in this case necessarily entails majority voting rights to elect a board of directors favorable to the continuation of his corporate policies. Construing paragraphs 10, 12 and 14 literally, to permit Ronnen to vote the Ronnen shares in board of directors elections to form a majority with shareholders possibly unfavorable to Norry’s management role would, thus, take away from Norry the bargained for management rights and privileges promised in paragraph 8. We have previously applied the principle that a contract which confers certain rights or benefits in one clause will not be construed in other provisions completely to undermine those rights or benefits
 
 (see, Two Guys from Harrison-N.Y. v S.F.R. Realty Assocs., supra,
 
 63 NY2d, at 405 ["generally, a contract which expressly permits an activity will not be construed to prohibit other conduct necessary to carrying out that activity”];
 
 Premium Point Park Assn. v Polar Bar,
 
 306 NY 507, 511 ["(w)e may not construe the covenant as
 
 *591
 
 prohibiting in one subdivision that which it expressly sanctions in another”]).
 

 Contrary to Ronnen’s contention, a transfer of Ronnen’s voting rights to Norry on election of a board of directors will not render paragraphs 10, 12 and 14 meaningless. These three provisions were manifestly intended to suit the purposes of Ronnen, guaranteeing her a seat on the board of directors and requiring the three Norry shareholders (Neil Norry and his sons) to vote the majority block of shares for directors who will be favorable to her position on access to corporate information and on imposing a ceiling on Norry’s compensation. Thus, the pluralized language in paragraphs 10, 12 and 14 that "[t]he parties agree that * * * they shall vote the Shares” in board of directors elections can readily be construed to refer to the three Ronnens who were parties to the agreement, all of whose shares would be necessary to form a majority voting block with the Ronnen shares. That interpretation should be favored, as it would reconcile paragraphs 10, 12 and 14 with paragraph 8 of the agreement and effectuate all of the parties’ objectives in entering into the agreement
 
 (see, Empire Props. Corp. v Manufacturers Trust Co.,
 
 288 NY 242, 248-249;
 
 see also, Two Guys from Harrison-N.Y. v S.F.R. Realty Assocs., supra,
 
 63 NY2d, at 404).
 

 For all the foregoing reasons, we hold that the courts below properly construed the shareholders’ agreement as giving Neil Norry the right to vote the Ronnen shares in board of directors elections. The position on appeal of appellants Lipsky and Livingston that, as thus construed, the shareholders’ agreement is void as against public policy is unpreserved and, hence, has not been considered.
 

 Finally, in view of the irrevocable proxy Ronnen gave Norry to vote the Ronnen shares in any election of directors, together with the other circumstances surrounding the March 13, 1995 shareholders’ meeting alluded to by Supreme Court, the ordering of a new board of directors election in this case was within that court’s discretionary equity powers under Business Corporation Law § 619 to "confirm the election, order a new election, or take such other action
 
 as justice may require”
 
 (emphasis supplied)
 
 (see, Matter of Kaminsky,
 
 251 App Div 132, 139-140,
 
 affd without opn
 
 277 NY 524;
 
 Matter of Lake Placid Co.,
 
 274 App Div 205;
 
 see also, Matter of Gearing v Kelly,
 
 11 NY2d 201,
 
 rearg denied
 
 11 NY2d 1016).
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 
 *592
 
 Chief Judge Kaye and Judges Titone, Bellacosa, Smith and Ciparick concur; Judge Simons taking no part.
 

 Order affirmed, with costs.