**TOKIO MARINE AND FIRE INSURANCE CO.,** Toyota Motor Credit Corporation, Plaintiffs–Appellees–Counter–Defendants,

v.

Ingrid K. ROSNER, Defendant–Appellant–Counterclaimant–Third–Party–Plaintiff,

Bay Ridge Motor Sales, Inc., Third Party Defendant.

No. 05–6481–cv.

United States Court of Appeals, Second Circuit.

Nov. 22, 2006.

Jeremy Cantor (Matthew K. Finkelstein, Clifford B. Aaron, of counsel), London Fischer LLP, New York, New York, for Plaintiff.

Philip A. Nemecek (Michael I. Verde, of counsel), Katten Muchin Rosenman LLP, New York, New York, for Defendants.

PRESENT: Honorable RICHARD J. CARDAMONE, Honorable JOHN M. WALKER, JR., Honorable REENA RAGGI, Circuit Judges.

### SUMMARY ORDER

Defendant Ingrid K. Rosner appeals from an award of summary judgment in favor of plaintiffs Tokio Marine and Fire Insurance Co., Ltd. ("Tokio Marine") and Toyota Motor Credit Corporation ("TMCC") and from the denial of her own motion for partial summary judgment. Tokio Marine is the insurer of a motor vehicle owned by TMCC and leased to Rosner on a long-term basis. Plaintiffs sued Rosner for indemnification of money damages paid by Tokio Marine on behalf of TMCC as compensation for injuries caused by Rosner while operating the leased vehicle. Although Rosner cannot dispute that her lease agreement with TMCC contains an indemnification clause, she submits that the provision is invalid under New York law. She asserts that, as a long-term lessee, she was a permissive user of the TMCC vehicle in question and, as such, under N.Y. Veh. and Traf. Law § 345(b)(2), 11 N.Y.C.R.R. § 60–1.1(c)(2), and Ins. Law § 3420(e), she must be recognized as an "insured" under TMCC's liability policy with Tokio Marine and, therefore, shielded from this indemnification action by New York's anti-subrogation rule. *See Pa. Gen. Ins. Co. v. Austin Powder Co.,* 68 N.Y.2d 465, 468, 510 N.Y.S.2d 67, 68, 502 N.E.2d 982 (1986) ("An insurer has no right of subrogation against its own insured for a claim arising from the very risk for which the insured was covered."). She further submits that plaintiffs were not entitled to summary judgment because evidence of deceptive business practices and fraudulent inducement raised a triable issue of fact as to the validity of her lease agreement. She also claims that issues as to the reasonableness of the settlement paid by Tokio Marine and the effect of the reassignment of the lease made summary judgment inappropriate.

We review a summary judgment award *de novo,* examining all facts in the light most favorable to the non-moving party. *See, e.g., Frommert v. Conkright,* 433 F.3d 254, 262 (2d Cir.2006); Fed.R.Civ.P. 56(c). We assume the parties' familiarity with the facts and the record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

A. *The Validity of the Lease Agreement's Indemnification Clause*

1. *New York Vehicle and Traffic Law § 345*

■ Rosner submits that the indemnification clause of her lease agreement with TMCC must be deemed invalid if, under New York law, she is an insured under the Tokio Marine policy with TMCC. In support, she cites N.Y. Veh. and Traf. Law § 345(b)(2–3), which states that a motor vehicle liability policy "shall insure as insured the person named therein and any other person using or responsible for the use of any such motor vehicle ... with the consent of such named insured" against personal injury in the amount of $25,000. Two other provisions of the same law, however, undercut Rosner's argument. *See id.* §§ 345(f); 345(g).

Section 345(g) states that a "motor vehicle liability policy" may encompass several

policies that together meet the requirements of the statute, including those of § 345(b)(2–3). The record demonstrates that the "motor vehicle liability policy" that insured the leased vehicle at issue consisted of (1) Rosner's personal insurance policy with State Farm for $100,000 in primary personal liability coverage, which policy Rosner was required to maintain as a condition of her lease agreement with TMCC and which named TMCC as an additional insured, *see* TMCC Lease Agreement ¶ 20(a); (2) Rosner's personal insurance policy with Traveler's for $1,000,000, and (3) the Tokio Marine policy with TMCC, which afforded excess coverage to the lessor, *see* Tokio Marine Policy, Endorsement 4, 2.

Section 345(f) specifically exempts excess insurance protection from provisions of the law relating to primary insurance, including the § 345(b)(2) requirement that permissive users be treated as primary insureds. Thus, because Rosner is *not* an insured under the Tokio Marine policy with TMCC, she is subject to suit for indemnification by that insurer.

■ To avoid this result, Rosner submits that Tokio Marine's policy insuring TMCC is primary, rather than excess, and that as a permissive user, she is thus required to be insured. In support, she cites language in the policy's Business Auto Coverage Form, which states that "[f]or any 'auto' [TMCC] own[s], this Coverage form provides primary insurance." Tokio Marine Policy, Business Auto Coverage Form, § IV(B)(5)(a). To the extent Endorsement 4 to the policy states that "the insurance provided by this endorsement is excess over any other collectible insurance," *id.*, Endorsement 4, 2, Rosner submits that the language is meaningless

because the endorsement itself provides no insurance. The law, however, disfavors contract constructions that render provisions meaningless. *See, e.g., Ronnen v. Ajax Elec. Motor Corp.*, 88 N.Y.2d 582, 589, 648 N.Y.S.2d 422, 424, 671 N.E.2d 534 (1996). In any event, when the quoted language from the endorsement is read in context, its meaning becomes plain. *See Analisa Salon, Ltd. v. Elide Props., LLC*, 30 A.D.3d 448, 448–49, 818 N.Y.S.2d 130, 131 (2d Dep't 2006) (holding that single clauses cannot be construed by taking them out of their context).

Endorsement 4 plainly states that it "changes the policy" with respect to the "insurance provided under the . . . Business Auto Coverage Form." Endorsement 4, 1. Thus, its reference to "insurance provided by this endorsement" can only sensibly be construed to refer to insurance originally provided as primary coverage in the Business Auto Coverage Form, which the endorsement now "changes" to provide as coverage excessive "over any other collectible insurance." *Id.* at 1–2 [1]. *See Belt Painting Corp. v. TIG Ins. Co.*, 100 N.Y.2d 377, 383, 763 N.Y.S.2d 790, 792, 795 N.E.2d 15 (2003) ("We read an insurance policy in light of common speech and the reasonable expectations of a businessperson." (internal quotation marks omitted)). That the change was intended to clarify that long-term leaseholders were afforded no coverage is clear from the fact that the endorsement also amended the policy to add a definition of "leased auto" as "an 'auto,' that you ("TMCC") lease, under a leasing agreement of at least one year, to a third party which requires the third party to provide *primary insurance* on your behalf." Endorsement 4, 1 (emphasis added).

---

1. To the extent Rosner points us to a policy issued by Tokio Marine to another vehicle leasing company to support her argument that there is language missing from Endorsement 4, her contention is entirely speculative and cannot defeat summary judgment.

In sum, because neither the record nor the law supports Rosner's claim that she is an insured under the Tokio Marine policy, she is not shielded from a suit for indemnification by N.Y. Veh. & Traf. Law § 345(b)(2–3). *See Citywide Auto Leasing, Inc. v. City of New York*, 294 A.D.2d 528, 528, 742 N.Y.S.2d 867, 868 (2d Dep't 2002) (upholding indemnification obligations of vehicle's long-term lessee); *Hamilton v. Khalife*, 289 A.D.2d 444, 445–46, 735 N.Y.S.2d 564, 566–67 (2d Dep't 2001) (upholding endorsement that excluded lessee from lessor's insurance policy).

#### 2. *11 NYCRR § 60–1.1(c)(2)*

Rosner's reliance on 11 NYCRR § 60–1.1(c)(2) is similarly misplaced. Although that regulation requires an owner's liability insurance policy to include a provision insuring as a primary "insured" any permissive user of the vehicle, it specifically permits an owner to exclude any "liability assumed by the insured under any contract or agreement." *Id.* § 60–1.2(b). In connection with the business auto coverage secured from Tokio Marine, TMCC noted such an exclusion, specifying that the insurance was to be "excess over any other collectible insurance." Tokio Marine Policy, Business Auto Coverage Form, § IV(B)(5)(a). Pursuant to her lease agreement with TMCC, Rosner contracted to maintain primary coverage with State Farm. Moreover, in doing so, she specifically acknowledged that the lease afforded *her* no insurance coverage.

Thus, 11 NYCRR § 60–1.1(c)(2) does not shield her from suit for indemnification.

#### 3. *New York Insurance Law § 3420*

Finally, New York Insurance Law § 3230 provides no support for Rosner's argument. The plain language of the statute requires a motor vehicle policy to cover the named insured for damages caused by the negligence of any permissive user, but, in contrast to N.Y.Veh. and Traf. Law § 345(b)(2) and 11 NYCRR § 60–1.1(c)(2), it nowhere states that the permissive user must himself be treated as an insured. The statute's singular focus is to promote New York's strong interest in "ensur[ing] access by injured persons to a financially responsible insured person against whom to recover for injuries." *ELRAC, Inc. v. Ward*, 96 N.Y.2d 58, 73, 724 N.Y.S.2d 692, 697, 748 N.E.2d 1 (2001) (internal quotation marks omitted); *Royal Indem. Co. v. Providence Washington Ins. Co.*, 92 N.Y.2d 653, 658, 684 N.Y.S.2d 470, 472, 707 N.E.2d 425 (1998) (same).

Rosner submits that *ELRAC* itself identifies limitations on a lessor's right to obtain indemnification from the permissive user of a motor vehicle. But *ELRAC* concerned a short-term rental contract, which is subject to N.Y. Veh. and Traf. Law § 370, and, as Rosner herself concedes, the mandatory insurance provisions of that statute are not applicable to the long-term lease agreement here at issue.

In sum, we reject on the merits Rosner's claim that the indemnification clause of her lease agreement is void under New York law.

### B. *Deceptive Practices and Fraudulent Inducement Claims*

Rosner submits that a clause in her lease indicating that TMCC "require[s] no other types of insurance" than the specified minimums evidences a deceptive business practice and fraudulent inducement calling into question the validity of her lease. *See Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29, 709 N.Y.S.2d 892, 895, 731 N.E.2d 608 (2000) (detailing elements of deceptive business practice); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Worley*, 257 A.D.2d 228, 233, 690 N.Y.S.2d 57, 61

(1st Dep't 1999) (detailing elements of fraudulent inducement). We disagree.

■ Both deception and fraud require evidence of a material misrepresentation or omission and reasonable reliance thereon. Rosner cannot make such a showing because the language she cites is contained within a paragraph that states at the outset, in large, bold type that "[p]hysical damage or liability insurance coverage for bodily injury and property damage caused to others is not included in this Lease." TMCC Lease Agreement ¶ 20. This explicit language ensures that the lessee cannot reasonably think that, while he is securing the specified minimum insurance, the lessor is providing him with greater coverage. Indeed, the conclusion is rendered inconceivable by the lease indemnification clause.

■ Nor can Rosner avoid summary judgment by pointing to a May 2003 news article discussing fees levied by TMCC in March of that year. The article is inadmissible hearsay, *see United States v. Difeaux*, 163 F.3d 725, 729 (2d Cir.1998) (holding that newspaper articles alleging improper motivations of prosecutor's office were impermissible hearsay), and, as such, cannot defeat summary judgment. *See* Fed.R.Civ.P. 56(e). Even if the article were admissible, however, Rosner fails to link the reported 2003 events to the lease she signed in 1997 so as to raise a triable factual issue of deceptive business practices or fraudulent inducement.

C.  *The Reasonableness of the Underlying Settlement*

To procure indemnification for an underlying claim that was voluntarily settled, the indemnitee must demonstrate, *inter alia,* that the settlement amount was reasonable. If a reasonable jury could conclude that it was not, summary judgment cannot be granted to the indemnitee. *See*

*Jemal v. Lucky Ins. Co.,* 260 A.D.2d 352, 353, 687 N.Y.S.2d 717, 717 (2d Dep't 1999). That is not this case.

■ Rosner advances three arguments to support her claim of unreasonableness: (1) that Tokio Marine and its lawyers effectively boxed her out of the settlement by requiring her insurers to tender the full limits of her policies; (2) that Tokio Marine's lawyers, because they were working on a contingency-fee basis, had an incentive to overpay on the settlement and, thereby, seek a larger recovery from her; and (3) that she had understood that Tokio Marine was assuming for itself the risks of any payments made pursuant to its further settlement negotiations. None is convincing. The first and second arguments are conclusory and unsupported by any evidence that the settlement paid was, in fact, unreasonable in light of the serious injuries sustained. The third argument is belied by the record, which shows that at the court proceeding to memorialize the settlement, TMCC's counsel specifically stated that the settlement "in no way prejudices" its right to pursue "common-law or contractual indemnification" from Rosner. *Hass v. TMCC,* Index No. 4775/00, Stipulation Hearing, Dec. 17, 2001, at 8. Rosner's counsel was present at the hearing and voiced no objection.

D.  *Reassignment of the TMCC Lease*

■ Rosner argues that the reassignment of her lease from TMCC to Bay Ridge Toyota in April 2000 absolves her of any obligation to indemnify the plaintiffs. She is wrong. The accident at issue took place in 1999, at which time Rosner had an enforceable agreement with TMCC obligating her to indemnify TMCC and its insurer for any liabilities it incurred as a result of the accident. That obligation was not extinguished by the transfer of the

lease, even though TMCC's right to pursue the indemnification claim arose only at the time of its payment of monies to Hass. *See McDermott v. New York*, 50 N.Y.2d 211, 217, 428 N.Y.S.2d 643, 645, 406 N.E.2d 460 (1980); *State v. Syracuse Rigging Co.*, 249 A.D.2d 758, 759, 671 N.Y.S.2d 801, 802 (3rd Dep't 1998).

We have considered all of defendant's remaining arguments, and we find them to be uniformly without merit. The September 30, 2005 order of the district court granting summary judgment to plaintiffs is hereby AFFIRMED.