1995 CAM LLC v West Side Advisors, LLC (2025 NY Slip Op 05782)

1995 CAM LLC v West Side Advisors, LLC

2025 NY Slip Op 05782

Decided on October 21, 2025

Court of Appeals

Wilson, Ch. J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on October 21, 2025

No. 72 

[*1]1995 CAM LLC, Respondent,
v
West Side Advisors, LLC et al., Appellants.

Steven Shackman, for appellants.
David B. Rosenbaum, for respondent.

WILSON, Chief Judge:

In the world of commercial leases, a "good guy" guaranty is a limited guaranty in which the guarantor's obligation extends only up to the point that the tenant surrenders the premises to the landlord, leaving the tenant solely responsible for rent due from that point forward [FN1]. The question in this case is whether the guaranty at issue operates in that manner. The guarantor's liability ended when the tenant vacated the premises and, under the terms of the guaranty in this agreement, was not conditioned on the landlord's acceptance of that surrender. Accordingly, we reverse.
I.
The following facts are undisputed. In November 2004, West Side Advisors ("WSA") entered into a lease agreement as a tenant with landlord, and owner, 1995 CAM LLC for the eighth floor of an office building located at 1995 Broadway, New York, New York (the "Premises"). The original lease agreement consists of the Standard Form of Office Lease created by the Real Estate Board of New York, Inc. ("REBNY") and a rider (together, the "Lease"). The parties modified and extended the Lease twice: first in February 2012 ("First Amendment") and again in March 2016 ("Second Amendment"). The Second Amendment extended the Lease term through February 28, 2023 and included a limited personal guaranty by Mr. Gary Lieberman, an officer of WSA.
In March 2020, WSA stopped paying certain utilities and in July 2020, it stopped paying rent. On October 28, 2020, WSA sent by certified mail a letter notifying 1995 CAM of its intent to surrender the Premises as of November 30, 2020 ("Vacatur Letter"). On or about November 30, 2020 WSA vacated the Premises, conducted a walkthrough with the building superintendent and delivered the keys to the same superintendent.
In October 2021, 1995 CAM commenced this action against WSA and Mr. Lieberman to recover unpaid rent and expenses accrued before and after WSA surrendered the Premises, as well as attorneys' fees. In September 2022, Supreme Court granted 1995 CAM's motion for summary judgment to the extent that it jointly and severally sought pre-vacatur damages from the defendants. Supreme Court denied 1995 CAM's motion for summary judgment to the extent that it sought post-vacatur damages because further discovery was needed to determine whether 1995 CAM had used commercially reasonable means to re-let the Premises as required under the terms of the Lease.
Following reargument of the summary judgment motion, on April 25, 2023, Supreme Court granted 1995 CAM's motion for summary judgment on its claims for post-vacatur damages holding WSA and Mr. Lieberman jointly and severally liable. They appealed.
The Appellate Division affirmed. The court held that because the guaranty requires WSA's surrender "'pursuant to the terms of the Lease' . . . defendant-tenant's failure to obtain plaintiff's written acceptance of the surrender of the premises precluded defendant-guarantor's avoidance of liability" (221 AD3d 420 [1st Dept 2023]). Appellants moved for leave to appeal from a final money judgment to review so much of the Appellate Division order as granted plaintiff's motion for summary judgment on its claim against Mr. Lieberman for post-vacatur damages, and we granted leave.
II. 
The question in this lawsuit is whether Mr. Lieberman's liability ends with WSA's surrender of possession, or with 1995 CAM's acceptance of surrender.
A guaranty "is subject 'to the ordinary principles of contract construction'" (Cooperatieve Centrale Raiffeisen-Boerenleenbank, B.A. v Navarro, 25 NY3d 485, 492 [2015], quoting Compagnie Financiere de CIC et de L'Union Europeenne v Merrill Lynch, Pierce, Fenner & Smith Inc., 188 F3d 31, 34 [2d Cir 1999]). "It is axiomatic that a contract is to be interpreted so as to give effect to the intention of the parties as expressed in the unequivocal language employed" (Matter of Wallace v 600 Partners Co., 86 NY2d 543, 548 [1995], quoting Breed v Insurance Co. of N. Am., 46 NY2d 351, 355 [1978]). Neither party here claims that the Lease is ambiguous or incomplete. "In the absence of any ambiguity, we look solely to the language used by the parties to discern the contract's meaning" (Vermont Teddy Bear Co., Inc. v 538 Madison Realty Co., 1 NY3d 470, 475 [2004]). "This rule is applied with special force 'in the context of real property transactions, where commercial certainty is a paramount concern, and where the instrument was negotiated between sophisticated, counseled business people negotiating at arm's length'" (Riverside S. Planning Corp. v CRP/Extell Riverside, L.P., 13 NY3d 398, 403 [2009], quoting Vermont Teddy Bear Co., 1 NY3d at 475).
"A guaranty is to be interpreted in the strictest manner" (White Rose Food v Saleh, 99 NY2d 589, 591 [2003]). Importantly, an interpretation that renders language in the guaranty superfluous is "a view unsupportable under standard principles of contract interpretation" (Lawyers' Fund for Client Protection of State of N.Y. v Bank Leumi Tr. Co. of New York, 94 NY2d 398, 404 [2000]). Accordingly, "[p]articular words should be considered, not as if isolated from the context, but in the light of the obligation as a whole and the intention of the parties as manifested thereby. Form should not prevail over substance and a sensible meaning of words should be sought" (William C. Atwater & Co. v Panama R. Co., 246 NY 519, 524 [1927]).
We now turn to the contract language at issue here. The guaranty, in Paragraph 9 of the Second Amendment, provides:
"Guarantor guarantees . . . that he shall pay to owner when due [all Tenant's monetary obligations] . . . that have accrued under the terms of the Lease . . . to the date that is the latest date that Tenant and its assigns, licensees and sublessees, if any, and shall have completely vacated and surrendered the Demised Premises to Owner free and clear of any and all subtenants and/or occupants pursuant to the terms of the Lease (which date may be earlier than the stated expiration date in the Lease.[)] Tenant shall provide Owner with not less than thirty (30) days prior notice of the date that it will be vacating and surrendering free and clear of any and all subtenants and other occupants."[FN2]
The guaranty does not define "surrender." However, the guaranty does incorporate "the terms of the Lease." The REBNY Lease contains two provisions relevant to the tenant's surrender. Paragraph 22 of the REBNY Lease (titled "End of Term") provides:
"Upon the expiration or other termination of the term of this Lease, Tenant shall quit and surrender to Owner the Demised Premises, broom clean, in good order and condition, ordinary wear and damages which Tenant is not required to repair as provided elsewhere in this Lease excepted, and Tenant shall remove all its property."
Paragraph 25 (titled "No Waiver") provides:
"No act or thing done by Owner or Owner's agents during the term hereby demised shall be deemed an acceptance of a surrender of said premises, and no agreement to accept such surrender shall be valid unless in writing signed by Owner. No employee of Owner or Owner's agent shall have any power to accept the keys of said premises prior to the termination of the Lease and the delivery of keys to any such agent or employee shall not operate as a termination of the Lease or a surrender of the premises."
The Appellate Division defined "surrender" in the guaranty with reference to paragraph 25 of the REBNY Lease. Under the Appellate Division's interpretation, WSA's "surrender" under the guaranty requires 1995 CAM's acceptance of such surrender. We disagree.
Tethering Mr. Lieberman's liability to 1995 CAM's acceptance of surrender would render most of the language in the guaranty superfluous. The language in the guaranty after "that have accrued under the terms of the Lease" conditions Mr. Lieberman's liability on WSA's actions. If Mr. Lieberman's liability were intended to be fully coterminous with that of WSA—that is, a full guaranty—all of the conditional language in the guaranty would be superfluous. "We have long and consistently ruled against any construction which would render a contractual [*2]provision meaningless or without force or effect" (Ronnen v Ajax Elec. Motor Corp., 88 NY2d 582, 589 [1996]). Relatedly, paragraph 22 of the REBNY Lease requires that at lease end, the tenant deliver the Premises vacant and broom clean. If the guaranty continued until the end of the Lease, there would be no need to reiterate the requirement that the Premises be delivered "completely vacant" in the guaranty. Inclusion of the "completely vacant" requirement in the guaranty becomes meaningful only if the guarantor's liability can end before the Lease ends, so that even when paragraph 22's "vacant and broom clean" requirement is not yet in effect (because the Lease has not ended), the "good guy" guaranty requires the premises be completely vacant at the earlier time as a condition of releasing the guarantor.[FN3]
Likewise, the Lease does not require that the tenant give any notice to vacate at the end of the lease term; the inclusion of the 30-day notice provision in the guaranty makes sense only if the guaranty can terminate before the end of the lease, leaving the tenant, but not the guarantor, liable for post-surrender rent. Indeed, reading "surrender" in the guaranty to include acceptance would render the 30-day notice an impossibility. If, as 1995 CAM contends, "surrender" in the guaranty requires its acceptance, the notice requirement would require WSA to provide notice 30 days before 1995 CAM accepts the surrender, which would be both impossible and nonsensical (Riverside S. Planning Corp. v CRP/Extell Riverside, L.P., 13 NY3d 398, 404 [2009], citing Atwater & Co. v. Panama R.R. Co., 246 N.Y. 519, 524 [1927] ["The entire contract must be reviewed and . . . a sensible meaning of words should be sought"]; Mastrovincenzo v City of New York, 435 F3d 78, 104 [2d Cir 2006] ["(W)ords should be given the meanings ordinarily ascribed to them and absurd results should be avoided"]). The only interpretation that provides meaning to the 30-day notice requirement is one where the parties intended the notice to communicate WSA's unilateral surrender of possession, terminating Mr. Lieberman's liability for damages occurring beyond the date of surrender of possession.
Paragraph 25 of the REBNY form lease, on which 1995 CAM relies, consists of "No Waiver" terms stating that a tenant cannot terminate a lease through certain types of conduct, instead requiring a written agreement to terminate the lease. WSA agrees that the lease was not terminated and that it remains liable for damages; the question here is whether the guaranty was terminated, which is governed by the language these parties negotiated and agreed upon concerning the guaranty. Moreover, the guaranty agreement provides that, "in the event there is any inconsistency between the terms of the [REBNY] Lease and the terms of this Agreement, the terms of the Agreement shall control."
It would be a simple matter for parties intending to enter into a "good guy" guaranty to say so explicitly, with clear language that does not require courts to resort to rules of construction regarding superfluity or canons that aid in determining the parties' intent. Here, although the parties could have expressed their intent in a much simpler and clearer way and avoided this litigation entirely, we conclude that the guaranty in this case is limited, confining the guarantor's liability to damages accruing prior to the date the tenant surrendered possession of the Premises. Under the terms of the guaranty, WSA surrendered possession of the Premises on or about November 30, 2020 when it provided 1995 CAM notice, completely vacated the Premises, and relinquished control of the Premises.
Accordingly, the judgment appealed from and so much of the Appellate Division order sought to be reviewed should be reversed, with costs, and plaintiff's motions for judgment under CPLR 3211 (c) and for summary judgment denied.

SINGAS, J. (dissenting):

Adherence to the plain text of contractual language is a deeply rooted principle in New York. When the text is clear, we enforce the terms of the bargain. The text of the instant guaranty and the lease it incorporates require us to hold guarantor to his full obligation. Because tenant failed to obtain landlord's written acceptance to tenant's purported surrender of the premises, no valid surrender occurred. In reaching the opposite conclusion, the majority disregards our bedrock principles of contract interpretation and years of case law properly interpreting similar provisions. I dissent.
I.
Tenant West Side Advisors, LLC entered into a lease agreement with landlord 1995 CAM LLC in November 2004. The original lease consisted of a Real Estate Board of New York (REBNY) Standard Form of Office Lease and a rider (together, the lease). Gary Lieberman, tenant's president and managing member, signed the lease on tenant's behalf. Relevantly, the lease sets forth requirements for a valid surrender. Under paragraph 25 of the lease, "no agreement to accept [tenant's] surrender shall be valid unless in writing signed by [landlord]." Moreover, tenant's "delivery of keys to any [unauthorized] agent or employee [of landlord] shall not operate as . . . a surrender of the premises."
The lease was amended in 2016 to include a personal guaranty signed by Lieberman (guarantor). Pursuant to that guaranty, guarantor agreed to pay tenant's unpaid expenses accruing on or before the date when tenant "shall have completely vacated and surrendered the [d]emised [p]remises . . . pursuant to the terms of the [l]ease." The guaranty also stipulates that tenant "shall provide [landlord] with not less than thirty (30) days prior notice of the date [*3]that it will be vacating and surrendering" the premises. As the majority observes (see majority op at 5 n 2), the guaranty at issue here was drafted by the parties and does not employ standard language.
In November 2020, tenant unilaterally vacated the premises after providing 30 days' notice to landlord. Tenant then returned the keys to the building's superintendent. It is undisputed that the superintendent lacked authorization to accept the keys on landlord's behalf.
Supreme Court concluded that guarantor's obligation was not discharged upon tenant's surrender and held guarantor liable under the lease for post-vacatur damages. The Appellate Division unanimously affirmed, reasoning that by the plain text of the lease and this particular guaranty, "tenant's failure to obtain [landlord's] written acceptance of the surrender of the premises precluded . . . guarantor's avoidance of liability" (221 AD3d 420, 421 [1st Dept 2023]). The Court explained that the "guaranty expressly require[d] tenant's surrender to be performed 'pursuant to the terms of the lease,' " and the lease "unambiguously mandate[d] written acceptance from [landlord]" (see id.).
II.
We interpret lease agreements and guaranty contracts using our general rules of contract interpretation (see Madison Ave. Leasehold, LLC v Madison Bentley Assoc. LLC, 8 NY3d 59, 66 [2006]; White Rose Food v Saleh, 99 NY2d 589, 591 [2003]; see also 63 NY Jur 2d, Guaranty and Suretyship § 118 ["Such a contract is not subject to rules of interpretation different from those applicable to any other contract"])[FN1]. This distills to the fundamental precept that we accept that the contracting parties mean what they say (see Donohue v Cuomo, 38 NY3d 1, 12 [2022]). Thus, the question in this case is the same as in all contract interpretation cases: "what . . . did these parties mean by this contract?" (Perkins v New York Cent. R.R. Co., 24 NY 196, 203 [1862]).
The text supplies the answer. Neither the parties nor the majority disputes that the guaranty incorporates the entire lease by reference. Accordingly, for guarantor's liability to be discharged, tenant must have surrendered the premises in accordance with the requirements of the lease. Under the plain meaning of the lease, tenant did not validly surrender the premises, and guarantor's obligation was not discharged (see Greenfield, 98 NY2d at 569 ["a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms"]; see Donohue, 38 NY3d at 13; W.W.W. Assoc. v Giancontieri, 77 NY2d 157, 162 [1990]).
Applying our contract interpretation principles to the instant lease, paragraph 25 provides that, to validly surrender the premises, tenant must return the keys to landlord's authorized agent or employee; returning the keys to an unauthorized party "shall not operate as a . . . surrender of the premises." Yet tenant concededly returned the keys to the building's superintendent, who lacked landlord's authorization to accept the keys. Thus, tenant did not validly surrender the premises "pursuant to the terms of the [l]ease." Without a valid surrender, guarantor remained obligated. The majority purports to acknowledge this fact, yet inexplicably ignores it in its analysis (see majority op at 5). Indeed, because tenant failed to turn over the keys in the manner expressly required to validly surrender the [*4]premises, the majority need not reach the lease's written acceptance requirement to determine that no valid surrender occurred.
Even assuming the superintendent was authorized to accept tenant's keys on landlord's behalf, tenant still did not validly surrender the premises. Paragraph 25 expressly requires landlord to accept tenant's surrender in writing for a surrender to be valid. This straightforward requirement in the REBNY standard form office lease, and other similar contractual language have been uniformly upheld by state and federal courts alike (see e.g. Hudson Towers Hous. Co., Inc. v VIP Yacht Cruises, Inc., 63 AD3d 413, 413 [1st Dept 2009] ["Article 25 of the parties' (REBNY standard form office) lease specifically states that there is no surrender of the premises without an agreement accepting such surrender in writing signed by the landlord"]; 1140 LLC v Meis Studio Inc., 225 AD3d 516, 517 [1st Dept 2024] [concluding that this language requires landlord's consent in writing for a valid surrender to occur]; Empire, LLC v Armin A. Meizlik Co., Inc., 2019 NY Slip Op 30012[U], *4 [Sup Ct, NY County 2019]). So too, lower courts have repeatedly reached this conclusion when interpreting guaranty contracts incorporating the same lease provision (see e.g. ROC-Lafayette Assoc., LLC v Sturm, 233 AD3d 418, 419-20 [1st Dept 2024]; 9-11 Stanton St. Realty Corp. v Stanton St. Cleaners, Inc., 222 AD3d 570, 571-572 [1st Dept 2023]; Empire LLC v Sharapov, 192 AD3d 417, 418 [1st Dept 2021]; 122 E. 42nd St., LLC v Scharf, 211 AD3d 517, 518 [1st Dept 2022]; 214 W. 39th St. LLC v Fashion Transcript LLC, 2019 NY Slip Op 31934[U], *5 [Sup Ct, NY County 2019]; 274 Madison Co. LLC v Tru Legacy Partners, 2019 NY Slip Op 31666[U], *3 [Sup Ct, NY County 2019]; 789 Ninth & 414 E. 74th Assoc. LLC v Hundalani, 2023 WL 4472162, *13, 2023 US Dist LEXIS 119175, *37-38 [SD NY, July 11, 2023, No. 21 Civ. 5314 (VM)]; 228E58STR LLC v Koleksiyon Mobilya San A.S., 2020 WL 4260959, *6-8, 2020 US Dist LEXIS 131734,*14-22 [SD NY, July 23, 2020, No. 19 Civ. 7795 (NRB)]).
The majority neither acknowledges nor explains its anomalous conclusion that this settled understanding of paragraph 25, honed by courts sitting in the heart of New York's commercial real estate market, is inapplicable here. Luckily, the majority's substantive analysis rests upon the unique contractual language at issue in the guaranty (see majority op at 6-8), and is necessarily cabined to the distinct and unusual agreement now before us. Even so, the majority erroneously sidesteps paragraph 25 altogether under the guise of resolving surplusage. In doing so, the majority elevates and credits certain haphazard phrases in the guaranty over the plain terms of the lease which are clearly incorporated into the guaranty.
Such a result is contrary to New York's fundamental contract interpretation principles. We have never held that the canon against surplusage is insurmountable, and have cautioned that "it is important to read the [contract] as a whole to ensure that excessive emphasis is not placed upon particular words or phrases" (South Rd. Assoc., LLC v International Bus. Machs. Corp., 4 NY3d 272, 277 [2005]). In attempting to resolve perceived surplusage, the majority places undue emphasis on the guaranty's requirement that tenant "completely vacate[ ]" the premises. In doing so, the majority skews the requirement's plain meaning: tenant must "completely vacate[ ] and surrender[ ]" the premises (emphasis added). The guaranty's use of the phrase "completely vacate[ ]" does not subsume its partner phrase, "surrender[ ]." Rather, both are requirements that must be given independent significance. And under paragraph 25, a valid "surrender[ ]" requires landlord's written acceptance. The majority also overemphasizes the guaranty's written notice requirement. Contrary to the majority's conclusion, my reading does not render this requirement "impossible and nonsensical" (majority op at 7). On the contrary, tenant complied with the notice requirement—landlord just chose not to accept tenant's surrender, consistent with the terms of the lease and the guaranty.
Furthermore, accepting the majority's interpretation would mean the guaranty's requirement that tenant's surrender be made "pursuant to the terms of the [l]ease" functionally means "pursuant to some terms of the lease," with no explicit indication that the parties intended this result. If the parties wished not to incorporate paragraph 25 into the guaranty, "surely no problem of draftsmanship would have stood in their way" (George Backer Mgt. Corp. v Acme Quilting Co., 46 NY2d 211, 218 [1978]). Yet the guaranty unquestionably incorporates the lease in its entirety. Thus, the best interpretation is one that gives meaning to all of the lease's relevant terms (cf. Nomura Home Equity Loan, 30 NY3d at 581 [courts should read a contract "as a harmonious and integrated whole"]). This holistic [*5]interpretation leads to one conclusion: tenant was required to surrender the premises pursuant to the terms of the lease, which required tenant to get landlord's written acceptance.
Perhaps guarantor, who was tenant's principal officer, subjectively intended to agree to a traditional "good guy" guaranty, as the majority speculates. But the majority credits this speculative intent over "the best evidence of what [the] parties . . . intend[ed]," here, the clear language of the lease and this specific guaranty (Donohue, 38 NY3d at 12). Because the majority forges "a new contract for the parties under the guise of interpreting the writing" (U.S. Bank N.A. v DLJ Mtge. Capital, Inc., 38 NY3d 169, 178 [2022], quoting Riverside S. Planning Corp. v CRP/Extell Riverside, L.P., 13 NY3d 398, 404 [2009]), I dissent.
Judgment appealed from and so much of the Appellate Division order sought to be reviewed reversed, with costs, and plaintiff's motions for judgment under CPLR 3211 (c) and for summary judgment denied. Opinion by Chief Judge Wilson. Judges Rivera, Cannataro, Troutman and Halligan concur. Judge Singas dissents and votes to affirm in an opinion, in which Judge Garcia concurs.
Decided October 21, 2025

Footnotes

Footnote 1: Under a standard "good guy guaranty," the guarantor is obligated to guarantee the lease payments until the tenant vacates and surrenders possession (see 7 Warren's Weed New York Real Property § 84.02 [9][2023]; 2 N.Y. Practice Guide: Business and Commercial § 12.05 [5] [2023]; Russo v. Heller, 80 AD3d 531, 532 [1st Dept 2011]). "This guaranty is so named because it is intended to induce the tenant to be a 'good guy' and leave the premises voluntarily when it can no longer pay the rent," permitting the landlord the option to relet the premises without undergoing the expenses of eviction or removal of the tenant's property (7 Warren's Weed New York Real Property § 84.02 [9][2023]).

Footnote 2: The guaranty at issue here was freely negotiated by the parties. Unlike the standard REBNY Lease, the guaranty here is not a "standard" REBNY guaranty.

Footnote 3: To the extent the guaranty's use of the phrase "free and clear of any and all subtenants and/or occupants pursuant to the terms of the Lease" affects the obligations under the guaranty, paragraph 22 of the REBNY lease describes detail beyond that provided in the guaranty: "broom clean, in good order and condition except for ordinary wear and damages, and with all property removed."

Footnote 1: Once a guaranty has been interpreted, the guarantor's obligations under the guaranty are then strictly construed so as not to hold the guarantor responsible for a performance not specified in the guaranty (see M.H. Metal Prods. Corp. v April, 251 NY 146, 150 [1929] ["the obligation of a guarantor is strictissimi juris, and . . . any alternation of the original contract to which his guaranty applies will result in discharging him from his obligation" (emphasis added)]); White Rose Food, 99 NY2d at 591, citing Wesselman v Engel Co., 309 NY 27, 30 [1955]; Smith v Molleson, 148 NY 241, 246-247 [1896]; see also Fehr Bros., Inc. v Scheinman, 121 AD2d 13, 15-16 [1st Dept 1986] ["the obligations of the guarantor must be strictly construed according to the terms of the agreement and cannot be altered, extended or enlarged by the creditor or debtor without the guarantor's consent, since he cannot be held responsible to guarantee a performance different from that which he intended or specified in the guarant(y)"]).